**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GLEN D. COCKRELL,

                Plaintiff,

v.                                             No. 13-CV-757 CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Reverse Agency Decision and Remand for Rehearing, with Supporting Memorandum* ("Motion"), filed on January 10, 2014, (Doc. 19); Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand for Rehearing* ("Response"), filed on March 10, 2014, (Doc. 20); and *Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Reverse and Remand for Rehearing* ("Reply"), filed on March 25, 2014, (Doc. 21).

On July 16, 2009, Glen D. Cockrell filed an application for disability insurance benefits, alleging disability beginning January 31, 2007. (Administrative Record ("AR") 21, 171–74, 187). His application was denied on December 30, 2009, (AR 84–87), and also upon reconsideration on May 6, 2010. (AR 89–91). Mr. Cockrell filed his request for a hearing on July 8, 2010, (AR 92–93); a hearing was held on July 22, 2011 before Administrative Law Judge ("ALJ") Ann Farris, (AR 35–78). Mr. Cockrell and Thomas Greiner, an impartial vocational expert, testified at the hearing. (AR 35–78). The ALJ issued her opinion on September 14, 2011, finding that Mr. Cockrell was not disabled under 20 C.F.R. § 404.1520(g). (AR 29–30). Mr. Cockrell filed an application for review by the Appeals Council, which was summarily denied, (AR 1–7), making the decision of

ALJ Farris the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Cockrell complains that ALJ Farris committed reversible, legal error because: (1) she did not permit him to present and question a witness at the hearing in violation of his due process rights; (2) the ALJ's residual functioning capacity ("RFC") finding was erroneous and unsupported by substantial evidence; and (3) the ALJ relied on and adopted the vocational expert's testimony in error of the law. (Doc. 19).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because substantial evidence does not support the ALJ's RFC finding, the Court finds that the Motion should be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

## I.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at

1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this

3

definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Mr. Cockrell initially applied for disability benefits alleging chronic back, hip, and leg problems. (AR 187). Mr. Cockrell explained that he had undergone six back surgeries, and that permanent hardware had been implanted into his back because of his back condition. (AR 187). The basis for Mr. Cockrell's disability claim was that he suffered nerve damage and disabling pain due to his chronic back problems and previous surgeries. (AR 187). The administrative record includes his medical records, earnings records, work history report, disability application, hearing testimony, examining consultative reports, and non-examining State agency evaluations, which were used by

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

the ALJ to evaluate Mr. Cockrell's disability claim.

At step one, ALJ Farris determined that Mr. Cockrell had not engaged in substantial gainful activity since his alleged onset date of disability. (AR 23). At step two, the ALJ concluded that Mr. Cockrell was severely impaired by "status/post-lumbar spine fusion procedure." (AR 23).

At step three, the ALJ explained that she specifically considered whether Mr. Cockrell's impairment satisfied or met any of the listings for spine disorders. (AR 24). She determined that none of Mr. Cockrell's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, and 404.1526. (AR 24).

The ALJ proceeded to step four. First, she analyzed the evidence in the record so she could determine Mr. Cockrell's RFC. She considered Mr. Cockrell's subjective complaints of pain and the objective medical evidence in the record, including various medical records and physicians' opinions. (AR 26–28).

A.    _The ALJ's Analysis of Mr. Cockrell's Credibility and Complaints of Pain_

ALJ Farris discussed the information that Mr. Cockrell provided in his disability application and at the hearing. Mr. Cockrell stated that he was unable to lift or remain stationary in one position for prolonged periods, had difficulty sitting, standing, and moving, and was unable to sleep. (AR 187). Mr. Cockrell testified that he had difficulty sitting and walking more than 40 or 50 yards at a time, could drive for short distances, and did not take pain medication because he handled his pain mentally and through maintaining an active lifestyle. (AR 47–49, 51). He reported that lying down on the floor for three to four minutes relieves his pain symptoms. (AR 48, 49, 75–76). Mr. Cockrell

testified that he considers himself to be a healthy person. (AR 58). In light of the foregoing, the ALJ concluded that Mr. Cockrell's daily activities were the same as a normal person's, other than going to work. (AR 26).

The ALJ noted that a Third-Party Function Report completed by Mr. Cockrell's wife on March 14, 2010. (AR 240–47). The ALJ commented that Mr. Cockrell's Function report was almost identical to the one completed by his wife. (AR 26). His wife wrote that Mr. Cockrell's pain was worse in the evening, that he has difficulty sleeping, and has almost cried due to his back pain. (AR 241).

ALJ Farris commented that the objective evidence demonstrates that Mr. Cockrell has had back problems since at least 2006, and has undergone numerous surgeries to correct those problems. (AR 292–317). Edward Maurin, M.D. operated on Mr. Cockrell and oversaw his recovery. (AR 384). Imaging studies taken of Mr. Cockrell's back in 2006 and 2007, show that he had some narrowing at multiple levels throughout his cervical and lumbar spine and mild upper-lumbar levoscoliosis, but were otherwise unremarkable. (AR 302, 308–09, 313). Mr. Cockrell identified his past back surgeries on his application for a National Hot Rod Association driver's racing competition license dated April 20, 2009, but noted no physical limitations or back problems. (AR 338).

On December 5, 2009, Harry Burger, D.O. examined Mr. Cockrell upon request of the Commissioner. (AR 319-22). Dr. Burger reported that Mr. Cockrell could rapidly reach down to touch his shoes and complete all of the tests in the evaluation, with no complaints of pain. (AR 321). Dr. Burger found that Mr. Cockrell was asymptomatic, had normal muscle and grip strength, no atrophy, and normal sensation. (AR 321). He concluded that Mr. Cockrell's back injuries do not restrict him, and observed Mr. Cockrell

6

jumping into a truck with no problem. (AR 321).

On February 15, 2010, Thaddeus Ray, D.O. evaluated Mr. Cockrell for pain management. (AR 360). Mr. Cockrell told Dr. Ray that changing positions, bending forward, or riding a bike helps to alleviate his pain. (AR 360). Mr. Cockrell reported that he did not take any medications for pain. (AR 358–59).

Mr. Cockrell began physical therapy, and was able to complete all exercises without any complaint, except for experiencing numbness in his left foot. (AR 364–75). He asked the physical therapist to make the exercises more challenging, and reported no increased pain or problems with the added exercises. (AR 364–75). He reported that a transcutaneous electrical nerve stimulation ("TENS") unit helped with his pain. (AR 374). On February 22, 2010, he reported low to medium back pain over the weekend from sitting. (AR 374). His physical therapist assessed that he was doing well. (AR 374).

Imaging studies of Mr. Cockrell's back taken on March 8, 2010 showed some mild narrowing of his vertebrae and mild upper lumbar levoscoliosis, but no compressive issues related to the neural foramen. (AR 350, 376–77). In October 2010, Dr. Maurin evaluated Mr. Cockrell again due to his complaints of low back pain. (AR 383). Mr. Cockrell stated that he was doing considerably better, and that imaging studies showed a stable curvature, but that cervical spine x-rays indicated some degenerative changes compatible with arthritis. (AR 383).

On October 26, 2010, Dr. Maurin wrote a letter at the request of Mr. Cockrell to provide the Commissioner with an overview of his general condition and course of treatment. (AR 384). Dr. Maurin explained that since 2004, he had surgically-operated on Mr. Cockrell three times to treat his diskitis, right leg pain, and central stenoses. (AR

7

384). Dr. Maurin stated that he continues to evaluate Mr. Cockrell intermittently for complaints of back pain and paresthesias, but the pain in his legs was substantially resolved. (AR 384). He explained that Mr. Cockrell has angulation above his long-segment fusion that he is monitoring, but had seen no progression over the previous year, and no further surgical intervention had been necessary. (AR 384).

ALJ Farris stated that she carefully considered the evidence in the record, but found that Mr. Cockrell's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment. (AR 26).

### B.    The ALJ's Analysis of the Medical Opinions in the Record

ALJ Farris granted substantial weight to the RFC assessments made by Eileen M. Brady, M.D. and Michael Finnegan, M.D , non-examining State agency physicians. (AR 26, 28). The ALJ did not weigh any of the other medical opinions in the record. (AR 28).

On December 30, 2009, Dr. Brady provided an RFC assessment of Mr. Cockrell. (AR 323–30). Dr. Brady opined that Mr. Cockrell could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, stand and walk for a total of six hours in an eight-hour workday, sit for a total of six hours in an eight-hour workday, and placed no limitations on his ability to push and pull. (AR 324). Dr. Brady pointed to specific evidence in the record in support of her findings, which included Mr. Cockrell's reports of his daily activities, his medical records, and Dr. Burger's consultative examination. (AR 324–25). She commented that the physician who examined Mr. Cockrell for his drag racing certificate observed no disqualifying defects or limitations. (AR 339).

Dr. Brady noted that one medical source statement in the file conflicted with her

own findings. (AR 329). She reviewed a letter from a neurosurgeon dated September 26, 2007, opining that Mr. Cockrell had spinal lumbar fusion, was unable to sit for long periods, and needed to change positions frequently.[2]  (AR 325). She could find no corresponding visit with the neurosurgeon in the record, and concluded that the opinion was unsupported by both the objective evidence and Mr. Cockrell's statements about his functional abilities. (AR 325, 329).

Dr. Brady also found that Mr. Cockrell could frequently climb, balance, stoop, kneel, crouch, and crawl without any limitation. (AR 325). She explained that those particular findings were based extensively upon Dr. Burger's observations during the consultative examination. (AR 325).

Dr. Finnegan assessed Mr. Cockrell's RFC on May 6, 2010, in connection with Mr. Cockrell's request for reconsideration of his claim. (AR 378). Dr. Finnegan reviewed Dr. Brady's RFC assessment, and the medical records that she relied upon. He also considered new records submitted into the administrative record, including the medical note by Mr. Cockrell's physical therapist that his symptoms were much improved as of February 16, 2010. (AR 378). Dr. Finnegan concluded that the medical evidence demonstrated that Mr. Cockrell's condition was unchanged. (AR 378). Dr. Finnegan opined that Mr. Cockrell's current status was compatible with Dr. Brady's RFC assessment, and adopted Dr. Brady's RFC as his own.

C.    *The ALJ's RFC and Past Work Findings*

The ALJ ultimately found that Mr. Cockrell could perform a range of light work as described in 20 C.F.R. § 404.1567(b), although with some restrictions. (AR 24). ALJ

---

[2]  Mr. Cockrell does not point the Court to that medical source statement, and the Court has not been able to locate it in the administrative record.

Farris determined that Mr. Cockrell was able to: (i) lift and carry 20 pounds occasionally and 10 pounds frequently; (ii) push and pull within those strength limitations; (iii) sit for two hours in an eight-hour workday; (iv) stand and walk up to six hours in an eight-hour workday; and (v) occasionally climb, balance, and crouch. (AR 24). The ALJ also noted that Mr. Cockrell should be allowed to alternate between sitting and standing at will, never kneel or crawl, have only moderate exposure to vibration, and avoid extreme cold. (AR 24).

The ALJ then explained that Mr. Cockrell's past relevant work included the jobs of auto mechanic, pipeline inspector, and metal fabricator. (AR 28). She found that Mr. Cockrell would be unable to do his past relevant work based on the RFC finding. (AR 28).

At step five, the ALJ noted that Mr. Cockrell was an individual of advanced age, and had at least a high school education, English-language skills, and acquired certain job skills from his past work. (AR 28). ALJ Farris adopted the testimony of the vocational expert, who stated that an individual with Mr. Cockrell's same age, education, past relevant work experience, and RFC could perform the job of Office Machine Servicer. (AR 29). The vocational expert testified that there were 150,000 Office Machine Servicer jobs available in the national economy, and 900 such jobs in New Mexico. (AR 72). The vocational expert also stated that an Office Machine Servicer job could accommodate the worker's necessity for a sit-stand option. (AR 74–75). ALJ Farris acknowledged that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT"), but explained that the discrepancy was only because the DOT does not address "sit/stand requirements." (AR 29).

10

ALJ Farris found that Mr. Cockrell was capable of performing work that exists in significant numbers in the national economy, and concluded that he was not disabled. (AR 29).

### IV. Analysis

In his Motion, Mr. Cockrell alleges ALJ Farris committed several reversible errors. Mr. Cockrell contends that the ALJ: (1) violated his due process rights when she did not allow Mr. Cockrell's wife to testify at the hearing; (2) made an RFC finding that was unsupported by substantial evidence, because she improperly considered his complaints of pain; and (3) adopted the vocational expert's testimony in error because the vocational expert failed to explain the inconsistency between her own testimony and the DOT. (Doc. 19 at 3, 7, 11).

The Commissioner responds that Plaintiff was afforded a fair hearing because he never actually called his wife as a witness at the hearing. (Doc. 20 at 4). The Commissioner also maintains that the ALJ properly considered Mr. Cockrell's subjective allegations of pain and the objective medical evidence in the record, and that her analysis provides adequate support for the adverse credibility finding. (Doc. 20 at 5–12). The Commissioner further contends that Mr. Cockrell has not demonstrated that the ALJ erred by failing to assign additional functional limitations to Mr. Cockrell pursuant to his complaints of pain. (Doc. 20 at 5–12). Finally, the Commissioner explains that the ALJ properly relied on the vocational expert's testimony to find that the job of Office Machine Servicer would accommodate Mr. Cockrell's need to change positions between sitting and standing throughout the workday. The Commissioner argues that there is no conflict between the DOT and the vocational expert's testimony because the DOT is silent as to

11

a particular job's sit/stand requirements. (Doc. 20 at 12–13).

A.   _Due Process Claim_

In his first point of error, Mr. Cockrell claims that the ALJ violated his due process rights by refusing to hear testimony from his wife. Mr. Cockrell argues that it was necessary for his wife to testify at the hearing in case he was not able to understand or completely answer all of the questions posed to him by the ALJ because of his pain. (AR 290). The Commissioner responds that Mr. Cockrell was provided a fair hearing that complied with constitutional and statutory requirements for disability administrative hearings.

Mr. Cockrell appeared at the hearing before ALJ Farris _pro se._ (AR 37–39). He maintains that his wife was excluded from the hearing room because the ALJ told her that she would not fit inside the room. (AR 290–91). He also alleges that ALJ Farris told his wife before the proceeding began that she would be called to testify if she were needed. (Doc. 19 at 3–4). Mr. Cockrell contends that he should have been allowed to present and question his wife as a witness, pursuant to due process of law, 20 C.F.R. § 404.929, and the _Notice of Hearing_. (Doc. 19 at 3–4) (citing AR 107–11).

A Social Security hearing is subject to procedural due process considerations. _Allison v. Heckler_, 711 F.2d 145, 147 (10th Cir. 1983) (citing _Richardson v. Perales_, 402 U.S. 389, 401–02 (1971)). Section 205(b) of the Social Security Act, 42 U.S.C. § 405(b), and the due process clause of the Fourteenth Amendment mandate that a disability benefits claimant receive meaningful notice and an opportunity to appear before an administrative law judge before his claim can be denied. _Stoner v. Sec'y of Health & Human Servs._, 837 F.2d 759, 760–61 (6th Cir. 1988). The statutory right to

12

appear is further implemented through the Regulations, which permit the claimant or his representative to present evidence and question witnesses during the hearing. *See id.* at 761(quoting 20 C.F.R. § 404.950(a)); *see also* 20 C.F.R. § 404.916.

However, the Regulations make the presentation and questioning of witnesses permissive, not requisite. *See Infante v. Apfel*, 2001 U.S. Dist LEXIS 6578, at *26 n.7 (S.D.N.Y. May 21, 2001). The Regulations provide that a disability claimant "may present witnesses and question any witnesses at the hearing," 20 C.F.R. § 404.916(b)(4), and that "[w]itnesses may appear at a hearing." 20 C.F.R. § 404.950(e). Similarly, the *Notice of Hearing* explained that Mr. Cockrell "may submit documents, present and question witnesses, state [his] case, and give written statements about the facts and law" at the hearing. (AR 110). Another district court, presented with a similar set of facts, concluded that "there is no statutory right to present or question witnesses at a disability hearing" because of the permissive language of the Regulations. *See Infante*, 2001 U.S. Dist. LEXIS 6578 at *26. Mr. Cockrell has not presented any legal authority that he had a constitutional right to present and question witnesses at his hearing. Therefore, the Court is inclined to follow the plain and permissive language of the Regulations, absent any authority stating otherwise.

The Commissioner argues that even if there is a constitutional right to present and question witnesses at a disability hearing, Mr. Cockrell has not provided any evidentiary support that he attempted to call his wife as a witness during the hearing. The Court has reviewed the hearing transcript, and cannot find any indication that Mr. Cockrell ever called his wife to testify, or that the ALJ denied such a request. Mr. Cockrell replies that Mr. Cockrell's wife was excluded from the hearing room before it began, and therefore

the conversation about his wife being a potential witness would not be reflected in the hearing transcript. (Doc. 21 at 1).

However, the ALJ asked Mr. Cockrell whether there was anything else he wanted to add before she concluded the hearing, and Mr. Cockrell responded that there was not. (AR 77). Therefore, the Court cannot find that Mr. Cockrell was denied the opportunity to present and question his wife as a witness at the hearing. Based on the evidentiary record, he never made an overt attempt to call her to testify.

Mr. Cockrell also argues that ALJ Farris had a duty to develop an adequate record relevant to the issues raised, and that she breached that duty by failing to call his wife as a witness. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997); *Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996). An ALJ has a heightened duty to develop the record when a claimant is not represented by counsel, as was the case here. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) (quotation and brackets omitted). "The length, or brevity, of a benefits hearing is not dispositive of whether or not the ALJ met the heightened obligation to fully develop the record in a case where the claimant is unrepresented." *Musgrave*, 966 F.2d at 1374. Rather, the issue is whether the ALJ asked sufficient questions in order to ascertain answers to the legally relevant questions. *See id.* at 1374–75.

The Court must determine whether the ALJ's duty of inquiry was satisfied in light of the documentary record and the extent of the claimant's testimony on the nature of his

impairments and their impact on his physical abilities. *See Glass v. Shalala*, 43 F.3d

1392, 1396 (10th Cir. 1994). The Commissioner maintains the hearing was adequate

because the written record is extensive. She also contends that Mr. Cockrell has not

identified how his wife's testimony would have assisted the ALJ in developing the record.

(Doc. 20 at 4–5). The Commissioner points out that Mr. Cockrell's wife had an

opportunity to describe Mr. Cockrell's limitations, as she perceives them, in the

Third-Party Function Report that she submitted to the Commissioner and completed on

March 14, 2010. (AR 240–47).

   The Court acknowledges that ALJ Farris's duty of inquiry was heightened

because Mr. Cockrell appeared *pro se* at the hearing. However, nothing in the record

indicates that Mr. Cockrell was experiencing so much pain that he could not have

advocated for himself. *Cf. Simien v. Astrue*, No. 06-5153, 2007 U.S. App. LEXIS 15715,

at *9 (10th Cir. June 28, 2007) (unpublished) (ALJ erred by not adequately questioning

claimant's mother at hearing, where claimant was a child with severe mental

impairments who could not be expected to advocate for himself). The hearing transcript

does not demonstrate that Mr. Cockrell struggled to understand the ALJ's questions, or

that he failed to answer the questions completely due to pain, injury, or illness. Mr.

Cockrell has not even asserted that was actually the case here; he merely argues that

his wife could have provided testimony to assist him with understanding and answering

questions.

   Mr. Cockrell argues in his Reply brief, and for the first time, that his wife's

testimony could have provided support for his own testimony and helped bolster his

credibility. (Doc. 21 at 1). However, a party is not permitted to raise new issues in a reply

brief. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 767 n. 7 (10th Cir. 2009); *Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008) (issues raised for the first time in a reply brief are generally deemed waived). Therefore, the Court finds that Mr. Cockrell has waived this argument because he raises it for the first time in the Reply brief.

The Court finds that Mr. Cockrell has not demonstrated that he had a constitutionally guaranteed right to present and examine his wife as a witness at the hearing before ALJ Farris. The Court further holds that the ALJ did not breach her duty to develop the record, because Mr. Cockrell has not identified why his wife's live testimony was necessary to assist the ALJ in assessing Mr. Cockrell's disability claim.

B.      *Mr. Cockrell's Challenge to the RFC Finding*

Mr. Cockrell argues that the ALJ did not properly consider his testimony regarding the extent and effect of his disabling pain in making the RFC finding, and therefore the ALJ rendered an RFC unsupported by evidence and law. (Doc. 19 at 7–8). As explained above, ALJ Farris assessed Mr. Cockrell as capable of doing a reduced range of light work. One of the additional limitations that she placed on Mr. Cockrell was that he must be able to alternate between a sitting and standing position at will. Mr. Cockrell argues that, based on his complaints of disabling back pain, the ALJ should have found that he must change his position continuously throughout the day, sometimes by moving into a lying down position. (Doc. 19 at 7). Therefore, the basis for Mr. Cockrell's challenge is that the RFC is unsupported by substantial evidence because the ALJ did not properly weigh the medical source statements in the record and improperly discounted his testimony about the severity of his pain symptoms. (Doc. 19 at 4–7).

### 1.    Standard for Evaluating Subjective Complaints of Pain

An ALJ may only find the claimant's pain to be disabling if it is "so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *See Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir. 1986) (quotations omitted). The ALJ must consider the credibility of Mr. Cockrell's subjective testimony about his pain, and its effect on his ability to work, in making the RFC determination. *See Madron v. Astrue*, No. 06-1200, 2009 U.S. App. LEXIS 2772, at *14 (10th Cir. Feb. 11, 2009) (unpublished) (citing Social Security Ruling ("SSR") 96-7p, 1996 SSR LEXIS 4, at *6). The framework for the proper analysis of Claimant's subjective testimony is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). The ALJ must consider:

> (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Musgrave*, 966 F.2d at 1375–76 (citing *Luna*, 834 F.2d at 163–64).

The ALJ found that Mr. Cockrell met the first two prongs of the three-part inquiry because his back impairment could reasonably be expected to cause his pain symptoms. (AR 26). Therefore, only the third prong of the ALJ's pain analysis is at issue in this case.

The third prong required ALJ Farris to consider all of the evidence, both objective and subjective, to determine whether Mr. Cockrell's pain was disabling. "Objective" evidence is any evidence, whether physiological or psychological, that can be discovered and substantiated by external testing. *Luna*, 834 F.2d at 162. "Subjective" evidence consists of statements by a claimant or other witnesses that can be evaluated only on the basis of credibility. *Id.* at 162 n.2. The ALJ noted that the objective

17

medical evidence demonstrates that Mr. Cockrell had a back problem producing pain. Therefore, the ALJ was required to consider his claims of disabling pain and decide whether she believed him. *Id.* at 163; *see also* 42 U.S.C. 423(d)(5)(A).

To determine whether a claimant's statements of his symptoms are believable, or credible, the ALJ must consider certain criteria in addition to the medical evidence in the record. 20 C.F.R. § 404.1529(c). (AR 25). The so-called "credibility factors" include the: (i) nature of the claimant's daily activities; (ii) the levels of medication and their effectiveness; (iii) the frequency of medical contacts; (iv) and the consistency of non-medical testimony with objective medical evidence. *See Branum v. Barnhart*, 385 F.3d 1268, 1273–74 (10th Cir. 2004) (quotation omitted). A formal factor-by-factor review of the evidence is not required. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

### 2.    *Mr. Cockrell's Challenge to the ALJ's Credibility Findings*

Mr. Cockrell argues that the ALJ failed to adequately explain why his testimony was not credible. (Doc. 19 at 7). Specifically, he maintains the ALJ did not make proper findings why she did not believe that he must lie down for several minutes at a time throughout the day to ease his pain. He contends that the ALJ was required to explain and provide support for her findings, which she did not do. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002).

Mr. Cockrell points out that he testified that when welding, walking, or sitting, he must take breaks so to lie down and stretch, or move around. (AR 42–43). He stated that lying on the floor temporarily relieves his pain, and that he has to change positions continuously all day due to pain. (AR 75–76).

18

Mr. Cockrell argues that medical evidence supports his testimony about his back pain requiring him to lie down throughout the day. On December 11, 2007, he reported to Dr. Maurin that he has pain in the left side of his back when walking, and suffers significant pain when walking across the parking lot. (AR 357). Dr. Maurin opined that Mr. Cockrell was "absolutely entitled to intermittent back pain." (AR 357).

Mr. Cockrell also maintains that the ALJ should have given deference to his wife's Third-Party Function Report. Ms. Cockrell wrote that Mr. Cockrell has to lie down in the evening and cannot sit to eat dinner. (AR 241). She also claims to prepare his meals and help with household chores because some days he has to lie down because of his pain and numbness. (AR 242). She reported that he cannot stand at the stove or sink, cannot vacuum, and must leave family functions early because of back pain. (AR 243, 245). She claims that he has to lean on something when standing or walking due to pain. (AR 245).

The Commissioner responds that substantial evidence supports the ALJ's credibility determination, because the ALJ properly noted and cited the medical evidence inconsistent with Mr. Cockrell's contention that he suffers disabling pain and functional loss. (Doc. 20 at 9). The Commissioner urges the Court to defer to the ALJ's credibility finding.

"Credibility determinations are peculiarly the province of the finder of fact," and the a reviewing court should not "upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). In this case, ALJ Farris recited all of the credibility factors, and then explained the specific evidence supporting her conclusion that Mr. Cockrell's subjective complaints were not credible. She specifically discussed several of the credibility factors, including

19

the frequency of Mr. Cockrell's contact with medical professionals during the disability period, his pain use and management, his daily activities, and his active lifestyle. She noted that Mr. Cockrell described himself as a healthy individual. The Court finds that the ALJ's credibility analysis is supported by substantial evidence in the record, which is all that the law requires.

### 3.   Weight Afforded to Dr. Brady and Dr. Finnegan's RFC Assessments

Mr. Cockrell also argues that the ALJ erred by granting the medical opinions of Eileen M. Brady, M.D. and Michael Finnegan, M.D.'s substantial weight when she considered their RFC assessments. (AR 28). He contends that there is insufficient evidence to support the weight afforded to their opinions, because those physicians relied on the examination of Dr. Burger.[3] He maintains that all of the other medical evidence in the record supports his allegations that he must change his position throughout the day due to pain, sometimes by moving into a lying down position.

It is undisputed that Dr. Brady and Dr. Finnegan are non-examining State agency physicians whose RFC assessments are medical opinions, or medical source statements, pursuant to 20 C.F.R. § 404.1513(c). The Social Security Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (per curiam) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2)); SSR 96-6p, 1996 SSR LEXIS 3, at *5–6. A non-examining

---

[3]  Mr. Cockrell alleges that Dr. Burger's consulting report was untruthful. The Court finds no reason to address that particular issue at this time.

State agency physician's medical opinion should be weighed by the ALJ in consideration of the following, applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(c)–(d) and 416.927 (c)–(d). The ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted).

ALJ Farris commented that, based on the evidence in the record, the State agency physicians concluded that Mr. Cockrell could perform light work. (AR 28). Without any explanation of which deference factors she considered, she concluded that she would accord Dr. Brady and Dr. Finnegan's opinions "substantial weight." (AR 28).

While the ALJ granted substantial weight to the opinions of Dr. Brady and Dr. Finnegan, she inexplicably diverged from them in making the RFC determination. For example, the ALJ limited Mr. Cockrell to sitting for only two hours in an eight-hour workday, while the State agency physicians found that he could sit for a total of six hours in an eight-hour workday. The ALJ placed strength limitations on Mr. Cockrell's ability to push and pull, while the State agency physicians placed none. The ALJ found that Mr. Cockrell could only occasionally climb, balance, crouch, and never kneel or crawl, while the State agency physicians determined that Mr. Cockrell would be able to do those activities frequently. (AR 325). The ALJ determined that Mr. Cockrell should avoid

21

extreme cold and vibration, but the State agency physicians placed no similar environmental limitations on him. (AR 327).

Relevant to the issues before the Court is that ALJ Farris restricted Mr. Cockrell to work that allowed for him to change his position between sitting and sitting throughout the day at will. Dr. Brady and Dr. Finnegan specifically found that Mr. Cockrell did not need to change his position at will in order to ease his pain because no evidence in the record could support such a finding.

The ALJ was silent as to why she deviated from Dr. Brady and Dr. Finnegan's RFC assessments. She did not weigh any of the other medical opinions in the record, and only cursorily explained that the RFC is supported by "notes from Dr. Maurin, the physical therapy notes, consulting examiner, Dr. Burger and [Mr. Cockrell's] own testimony." (AR 28).

### 4.    The ALJ RFC Finding is Not Supported by Substantial Evidence

The ALJ concluded that Mr. Cockrell is restricted to work that allows him to change his position between sitting and standing throughout the day. She did not further restrict him to work that would permit him to lie down. The Court finds that the ALJ's finding does not comport with her weighing of the medical opinions in the record or her generally adverse credibility finding.

ALJ Farris failed to explain why she departed from Dr. Brady and Dr. Finnegan's RFC assessments. The Court is unable to determine what objective evidence may have supported her RFC finding, because the ALJ did not weigh any of the other medical opinions in the record. As explained above, Dr. Brady and Dr. Finnegan found that it was not necessary for Mr. Cockrell to change positions to ease his pain. Therefore, the ALJ's

finding is in conflict with their opinions, which she failed to acknowledge or resolve.

Further, it is unclear what subjective evidence she found to be credible, because her credibility finding was overall adverse to Mr. Cockrell's testimony. The Court recognizes that it should defer to the fact finder's credibility determination. *See Diaz*, 898 F.2d at 777. However, in this case, the ALJ stated that she did not believe most of Mr. Cockrell's testimony about his pain, but then made RFC findings indicating she found some of his testimony to be credible. The ALJ did not provide any reasons why she restricted Mr. Cockrell to work that would allow him to sit and stand at will, but not lie down, when Mr. Cockrell testified that he must do all three to ease his pain. Therefore, the Court is left to wonder why she seemingly found some portions of his testimony about his pain to be credible, but not others.

The Court may not supply possible reasons why the ALJ determined that Mr. Cockrell is limited to work which permits him to sit and stand at will, but not also work that allows him to lie down at will. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004) (per curiam). Therefore, the ALJ's pain and RFC findings are "beyond meaningful judicial review," because the Court is unable to assess whether relevant evidence adequately supports the ALJ's conclusion or whether the correct legal standards were applied in the absence of any ALJ findings supported by specific weighing of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

## V. Conclusion

For the reasons discussed above, the Court concludes that the ALJ's RFC finding is unsupported by substantial evidence. On remand the ALJ should provide adequate explanation for her RFC finding. Specifically, the ALJ should explain why Mr. Cockrell is

restricted to work that permits him to sit and stand at will, but not to work that would allow him to lie down at will.

IT IS THEREFORE ORDERED that Plaintiff's *Motion to Reverse Agency Decision and Remand for Rehearing, with Supporting Memorandum*, (Doc. 19), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE